IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Greg Lamont Harrison, ) | |
| ) | Civil Action No. 8:16-598-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Ricky W. Madden, Donchel Hill, ) | |
| Scott Russ, Matt Emery, and ) | |
| Greg Allison, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 30). The plaintiff, a pretrial detainee who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

The defendants filed a motion for summary judgment on July 8, 2016 (doc. 30). On July 11, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 31). The plaintiff filed a response in opposition to the motion on August 4, 2016, and a supplement to that response on August 12, 2016 (docs. 34, 48). The defendants filed a reply on August 15, 2016 (doc. 44).

## FACTS PRESENTED

On March 31, 2015, while on active patrol, Captain Boggs, an officer with the Greenwood County Sheriff's Office, observed a suspicious vehicle parked in a wooded area beside a residence on East Cambridge Avenue Extension, which was known to be vacant.

(doc. 30-2 at 4-5, Reeder aff., GCSO – Harrison 000001-2). The vehicle had been reported as a suspicious vehicle in connection to some burglaries that occurred in the area (*id.*). Captain Boggs called for assistance, and when backup arrived, they positioned their vehicles in a church parking lot where they could see the driveway (*id.*). The officers observed the suspicious vehicle, a silver Chevrolet Avalanche, pull out of the driveway of the vacant residence and drive to a mobile home on Parkland Place Road (*id.*). The plaintiff, Gregory Harrison, was identified getting out of the truck and went inside the residence (*id.*).

Captain Boggs then performed a property check of the residence where the plaintiff was spotted on East Cambridge Avenue Extension and found that the back door had been kicked in and the home had been burglarized (*id.*). The property owners were notified. Two of the owners were from out of town and needed to make arrangements to identify what had been stolen (*id.*). Evidence was gathered at the scene including tire tracks and shoe prints, both of which were consistent with impressions located at other burglary scenes that the plaintiff was suspected to have committed (*id.* at 4-5, 7, Reeder aff.,GCSO – Harrison 000001-2, 4).

On April 1, 2015, Investigator Boyer obtained two warrants for the plaintiff's arrest on charges of burglary-second degree and malicious injury to tree, house; trespass upon real property, injury value $2,000 or less, for the East Cambridge Avenue Extension property (*id.* at 7-9, Reeder aff., GCSO – Harrison 000004-6). On April 2, 2015, the plaintiff was taken into custody at a Greenwood City Police checkpoint at which time he was driving a white Chevrolet pickup truck (*id.*). At the time of his arrest, the plaintiff had items in his front left pocket that were later identified as stolen from 122 Stratford Road (*id.*).

A search warrant was issued on April 1, 2015, to search the premises of the plaintiff's residence at 1011 Parkland Place Road, Lot 58, Greenwood, South Carolina (*id.* at 10-27, Reeder aff., GCSO – Harrison 000007-24). The property sought is listed and

described in Attachment A of the search warrant (*id.* at 24, Reeder aff., GCSO – Harrison 000021). Attachment A provides as follows:

> The property sought is any and all property that was reported stolen in connection with burglaries beginning on or around October 24, 2014, through April 1, 2015, within the county of Greenwood, SC. This property includes, but is not limited to, precious metals, tools, silverware, jewelry, and firearms. Additional property sought is items used or worn during the commission of these crimes, including, but not limited to shirts, jackets, pants, caps, hats, scarves, masks, gloves, socks, shoes and boots. Additional items sought are maps of the areas where burglaries occurred, receipts or related documentation relating to the appraisal and/or disposal of stolen items, implements that may be used to force entry into buildings and dwellings, such as crowbars or screwdrivers. Also sought is a 2002 Chevrolet Avalanche (VIN#3GNEK13T02G212608) which was used to facilitate/commit burglaries reported during the above time frame in Greenwood, County SC.

(*Id.*). In addition, the burglaries and information gathered from the ongoing investigation by the Greenwood County Sheriff's Office are described in Attachment B of the search warrant (*id.* at 16-18, Reeder aff., GCSO – Harrison 000013-15). One victim reported that a safe had been stolen, and two victims reported that they had recently had yard work done and suspected involvement by those individuals (*id.*). The search warrant was executed on April 1st, and the items taken pursuant to the search warrant were documented (*id.* at 10-11, 19-20, Reeder aff., GCSO – Harrison 000007-8, 16-17). The items seized included two sentry safes and a wallet containing $401.00 (*id.*).

On April 2, 2015, search warrants were issued for the silver Chevrolet Avalanche the plaintiff was driving when he was seen leaving the residence on East Cambridge Avenue Extension and the white 2001 Chevrolet pickup truck plaintiff was driving at the time he was arrested (*id.* at 36-39, 42-46,48-50 Reeder aff., GCSO – Harrison 000033-36, 39-43, 45-47). Those warrants identify additional property to be seized. In particular, the search warrants described the property sought as "Tools to include both

3

power and hand, jewelry, coins, currency, gloves, shoes, safes, lock boxes, guns, electronics, collectibles included sports memorabilia, burglary tools, yard implements, pawn slips, silver, and documents relating to the sale of precious metals and jewelry" (*id.* at 42, 48, Reeder aff., GCSO – Harrison 000039, 45). The pickup also had items visible in plain view that matched the description of items reported stolen in several burglaries (*id.*). In addition, after plaintiff's arrest, it was determined that he was a suspect in a burglary that had taken place just a couple hours prior to his arrest (*id.*).

A riding lawn mower and air compressor were reported stolen on April 5, 2015 (doc. 30-2 at 53-60, Reeder aff., GCSO – Harrison 000050-57). The responding officers remembered seeing the items described by the victim during the execution of the search warrant at the plaintiff's residence at 1011 Parkland Place Road, Lot 58, a few days earlier. Defendants Madden, Boyer, and Emery returned to 1011 Parkland Place Road on April 6, 2015, and received "a signed consent to search residence form" from a person living there, and they recovered a riding lawn mower and air compressor that matched the description of those reported stolen (*id.* at 57, Reeder aff., GCSO – Harrison 000054).

Since his arrest on April 2, 2015, plaintiff has been charged in relation to burglaries reported from October 24, 2014, through April 1, 2015. The plaintiff's pending charges include: six charges of grand larceny, eight charges of burglary - 2nd degree, five charges of burglary - 1st degree, two charges of petit larceny, twelve charges of malicious injury to real property, one charge of receiving/possession of stolen goods, and one charge of safecracking (doc. 30-3, Downing aff. ¶ 7). According to the Greenwood County criminal docket, the plaintiff's charges remain pending as of the date of this recommendation. *See* http://publicindex.sccourts.org/greenwood/courtrosters/PendingCases.aspx (enter "General Sessions," "Greg Harrison," and "load cases") (last visited Jan. 23, 2017). See *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (courts "may properly take judicial notice of matters of public record.").

In his complaint, the plaintiff states that "the search warrant was legal," but alleges that some of the property that was seized was not stolen, and thus the items were illegally seized pursuant to the search warrant (doc. 1 at 4). Specifically, plaintiff claims that the following items were illegally seized: a safe containing $7,800.00, a wallet containing $401.00, and 25 other things that he "has a list of" (*id.* at 3). The plaintiff also argues that the search and seizure of the riding lawn mower and air tank was a violation of his constitutional rights (*id.* at 4). The plaintiff seeks the return of "everything that was seized and found not stolen," or, in the alternative, the value of the 27 items that were wrongly taken (*id.* at 5). He also asks that the court investigate and charge the defendant officers with burglary, safecracking, and grand larceny (*id.*).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Fourth Amendment*

The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable searches and seizures."  The "central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." *United States v. Ortiz*, 422 U.S. 891, 895 (1975) (citations omitted).  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable*." Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).  "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks and citations omitted).

> The Fourth Circuit Court of Appeals has held:
>
> A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality); *see also United States v. Squillacote*, 221 F.3d 542, 555 (4th Cir.2000). However, a search warrant is not a "constitutional strait jacket." *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir.1988) (citation and internal quotations omitted). In interpreting search warrants, we must heed the Supreme Court's reminders to

6

> employ a "commonsense and realistic" approach, *United States v. Ventresca*, 380 U.S. 102, 108, (1965), and avoid "'hypertechnical' scrutiny ... lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir.2001) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). These fundamental legal principles apply not only to determining the validity of a warrant but also to assessing its scope. *United States v. Srivastava*, 540 F.3d 277, 290, n.16 (4th Cir.2008).

*U.S. v. Phillips*, 588 F.3d 218, 223 (4th Cir.2009).

In addition, courts have sometimes found seizure of items not specifically named in a search warrant to be reasonable. In *Horton v. California*, 496 U.S. 128 (1990), the officers executed a search warrant for the fruits of a robbery, including three specifically described rings. *Id*. at 131. The officers did not find the rings, but discovered and seized guns of the type used in the robbery. *Id*. Because the weapons were found in a place where the undiscovered items could have been located, the seizure met what the Court referred to as the "essential predicate ... that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id*. at 136.

Furthermore, courts have also permitted items related to the same type of criminal behavior to be seized, even where there is no nexus to the specific crime at issue. For instance, in the execution of a search warrant for stolen property, courts have allowed seizure of items believed to have been stolen on another occasion. *See, e.g., United States v. Golay*, 502 F.2d 182 (8th Cir.1974); *State v. Turner*, 504 P.2d 168, 172 (Kan. 1972); *State v. Streitz*, 258 N.W.2d 768, 773 (Minn.1977).

The plaintiff alleges that some of the property seized during the execution of the search warrants was personal property, not stolen property, and was not seized pursuant to the search warrants. The plaintiff specifically claims that a safe with money in it and wallet with money in it were wrongfully seized. However, as more fully set forth above, the property described in the search warrant for the residence included items

7

reported stolen including precious metals, tools, silverware, jewelry, and firearms (doc. 30-2 at 24, Reeder aff., GCSO – Harrison 000021). In addition, in Attachment B of the search warrant, a victim reported that a safe had been stolen in a burglary on October 24, 2014 (*id.* at 16-18, Reeder aff., GCSO – Harrison 000013-15). In addition, the defendants had recovered jewelry that the plaintiff had pawned to Gold Traders of America, and they had reports that money and collectible coins had been stolen during burglaries in the area (*id.* at 16, Reeder aff., GCSO – Harrison 000013). The items in issue in this case including any alleged safe, wallet, and money contained therein was seized as evidence for criminal charges including but not limited to burglary, larceny, safecracking, and receiving or possessing stolen goods. The defendants acted reasonably and based on probable cause when they seized the two safes and the wallet pursuant to the search warrant. The property seized was of the type of evidence related to the crimes being investigated, and the search and seizure was well within the bounds of the Fourth Amendment.

The plaintiff further alleges that a lawn mower and air tank were unlawfully seized two days after the initial search. A riding lawn mower, weed eater, chainsaw, miter saw, and air compressor were reported stolen on April 5, 2015 (doc. 30-2 at 53, Reeder aff., GCSO – Harrison 000050). Defendants Madden, Boyer, and Emery returned to the plaintiff's residence at 1011 Parkland Place Road and received "a signed consent to search residence form" from the woman living there, and they recovered a riding lawn mower and air compressor that matched the description of those reported stolen (*id.* at 57, Reeder aff., GCSO – Harrison 000054). While the plaintiff claims that the officers "manipulated" his daughter and that she never gave consent for the search, he has presented no evidence of this other than his own conclusory allegations.

Further, the search warrant for the 2001 Chevrolet pickup that plaintiff was driving at the time he was arrested describes the property subject to the search warrant as "Tools to include both power and hand, jewelry, coins, currency, gloves, shoes, safes, lock

8

boxes, guns, electronics, collectibles to included sports memorabilia, burglary tools, yard implements, pawn slips, and documents relating to the sale of precious metals and jewelry" (*id.* at 42, Reeder aff., GCSO –Harrison 000039-40). It is also significant to note that two victims reported suspicious persons had recently performed yard work prior to the burglaries, and a "G&H Tree Service" t-shirt, business cards for a tree service, Dewalt set of drill bits, a weed eater, and a chain saw were recovered pursuant to the search warrants and were believed to be stolen property and/or evidence used in the commission of a crime (*id.* at 16-18, 30, Reeder aff. GCSO – Harrison 000013-15, 27).

Property was seized during each search that was reasonably believed to have been used in the commission of a crime, obtained or worn during the commission of a crime, and/or property that was reported stolen or believed to be stolen. The defendants acted reasonably and based on probable cause when the seized the property at issue in this case. Based upon the foregoing, the plaintiff's allegations do not give rise to a Fourth Amendment deprivation.

In his response in opposition to the motion for summary judgment, the plaintiff argues that he was arrested in violation of his Fourth Amendment and Fourteenth Amendment rights (doc. 34 at 14-19). He contends that he was arrested without probable cause and argues that the defendants "broke the law . . . and need to be put in prison" (*id.* at 2–4, 11-19, 21). In his complaint, however, the plaintiff did not raise any issue as to his arrest and alleged only that the defendants seized items outside the scope of the search warrants (*see generally* doc. 1). Accordingly, no such allegation is properly before the court. Furthermore, the plaintiff admits that arrest warrants were issued in this case (doc. 34 at 12). To state a claim for false arrest under § 1983, a plaintiff must allege that the arrest was made without a facially valid arrest warrant. *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir.1998); *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir.1996) (holding a public official cannot be charged with false arrest when he arrests a defendant

pursuant to a facially valid warrant).  Moreover, even if the claim was properly before the court, the plaintiff's request for injunctive and/or declaratory relief in the nature of orders telling the state court to dismiss the charges now pending against him or to punish any of the defendants are barred by the doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), as will be discussed below.

***Qualified Immunity***

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See  Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In this case, the law enforcement officers conducted searches, pursuant to valid search warrants and with the consent of the resident, and seized property that was used in the commission of a crime, obtained, used, or worn during the commission of a crime, reported stolen and/or property that they believed to be stolen.  For instance, a safe, money, collectible coins, jewelry, silverware, a riding lawn mower, chain saw, air compressor, and miter saw

were all items reported stolen. In addition, the defendants confirmed that the plaintiff pawned jewelry stolen during a burglary in the area. The defendants reasonably believed the safe and its contents, the wallet and its contents, the riding lawn mower, and the air compressor were stolen property and evidence of criminal activity, and the plaintiff has failed to set forth facts sufficient to establish otherwise. As discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, they are entitled to qualified immunity.

### *State Claims*

To the extent the plaintiff alleges any claim based on state law, the South Carolina Tort Claims Act operates as a bar to the plaintiff's alleged claim. South Carolina Code Annotated Section 15-78-70 provides that individual defendants are not proper parties to the extent the plaintiff attempts to allege a claim based on state law. Further, individual employees of a governmental entity are immune from suit except when that employee is engaged in conduct that is not within the scope of his official duties, or conduct that amounts to actual fraud, actual malice, intent to harm, and/or a crime of moral turpitude. S.C. Code Ann. § 15-78-70(b). None of the exceptions from immunity exist here. Accordingly, the defendants cannot be liable to the plaintiff based on any theory under state law.

### *Younger v. Harris Abstention*

The defendants argue in the alternative that the court should abstain from ruling during the pendency of the plaintiff's state court criminal proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) (doc. 44 at 4). The undersigned agrees. In his complaint, the plaintiff states, "I want everything that was seized and found not stolen return back to me and each officer arrested for burglar[y] or grand larceny" (doc. 1 at 5). The plaintiff's criminal charges are still pending, and the property seized is evidence that may be used in the criminal case against the plaintiff. In *Younger*, 401 U.S. at 43–44, the

11

Supreme Court held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir.1996). The Court in *Younger* noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–44. From *Younger* and its progeny, the United States Court of Appeals for the Fourth Circuit has developed the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir.1994) (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

In this case, the plaintiff is clearly involved in an ongoing state criminal proceeding; therefore, the first prong for abstention is satisfied. The second criterion has been addressed by the Supreme Court: "[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). With regard to the third criterion, the Court noted that "'ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights.'" *Gilliam*, 75 F.3d at 903 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). The plaintiff has made no showing that he cannot vindicate his federal constitutional rights in state court. Accordingly, even if the plaintiff had a viable Section 1983 claim, the court should abstain from ruling during the pendency of the plaintiff's state criminal case. Therefore, in the alternative to granting summary judgment to the defendants, the undersigned recommends that this case be dismissed *without prejudice.*

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned recommends that the district court grant the defendants' motion for summary judgment (doc. 30).  In the alternative, the district court should abstain from interfering with the pending state court criminal proceedings pursuant to *Younger v. Harris*, and the case should be dismissed *without prejudice*, which would render the motion for summary judgment moot.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald<br>
United States Magistrate Judge

January 23, 2017<br>
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).